Appeal 1590-2008 The next argument is in Black v. CE Soir Lingerie, Appeal 1590-2008. Good morning to you. Welcome to the court. Thank you. Opposing counsel is in place, so let's begin. Your Honor, this morning I want to focus on a couple of core mistakes that the District Court made in finding the Black nipple cover method obvious. First, Your Honor, I want to focus on the evidence of non-obviousness that was presented by plaintiff that was not accepted by the District Court. Your Honor, before Black's invention, it was understood in the art that if you were trying to make a device that would appear invisible or would appear less visible, it would appear like you were going braless, that you would have a small device, a device that would cover just the nipple and areola. In fact, Your Honor, all four of the prior art references that were relied upon by the District Court teach that, state explicitly only cover the nipple and areola. It was unexpected, Your Honor, that by taking the circumference of the device and expanding the perimeter, that that would result in a device that was actually less visible. Making it bigger would make it less visible. Why is that unexpected? I don't follow that at all. Because the logic, Your Honor, that was taught was that if you want to make it less visible, have less of it. We want to have less material that's exposed. So you're saying the prior art taught away, the prior art taught make the covering smaller. Yes, Your Honor. Wow. Maybe. Well, I can recite, Your Honor, for example, Woodley, one of the references that the District Court relied upon. Woodley shows a device that is tapered in configuration from the central portion to the periphery, correct? Yes, Your Honor. Isn't it entirely reasonable and a matter of common sense that if you have something that's tapered and you want the taper to be more gradual and therefore less apparent, that you simply extend the size? The longer something is, the more gradual the tapering, the less apparent the projection might be? That physical fact is certainly apparent, Your Honor, but that fact alone, and that fact would not lead to any less visibility. Why not? That's just a matter of common sense, isn't it? Not totally predictable, totally expected. No, the issue with Woodley was not that there was a tapering that was problematic, that you could detect the tapering. The issue was the edges, Your Honor. It's about the periphery, the edges. And there was nothing in the prior art that taught by making the periphery bigger, by making the circumference bigger, it will make it less visible. In fact, it will become invisible under sheer clothing. The prior art taught just the opposite. It turned out unexpectedly as a fact that when the periphery is made bigger and it hits the breast on a curved portion of the breast, not on the flat portion around the areola, that it is less visible. But Hattori certainly taught extending the covering. No, Your Honor, it taught two different types of covering. For the purpose of a device that was designed to be a nipple cover, it also taught only cover the nipple and areola. Well, but doesn't Hattori show covering different portions of the breast in terms of size, area, cover? It shows two different, Your Honor. It shows one that is the nipple cover that's designed to be less visible. It also shows a full coverage device. And that's what the prior art taught, Your Honor. You would either have a full coverage device, usually for purposes of support or security, or you'd have, if you wanted to make it less visible, smaller. Now, your claim, as I recall, but correct me if I'm wrong, as to coverage, says it has to be more than half but less than all. That's correct. So that would include, say, 95% coverage, right? I don't know what the exact percentage would be, Your Honor. That's not in the record. I would think 95%. If it's more than half and it's less than whole and we're using percentage, then it would be 51 to 100, would it not? No, Your Honor. It wouldn't? No. Oh, OK. Well, explain to me why that wouldn't be the case. Because the purpose of having it be less than all is that there must be a meaningful gap between the edge of the cover and the full area of the breast so that the cover could hit the curved portion of the breast. That's why it has to be less than all. OK. If you had 99.9%, it would not be there. 95% is getting close. I don't know. OK, well, let me go with 75%. That's halfway. Certainly. Between half and all. Now, I'm puzzled by your argument about the prior art in no way suggesting Black's method. If the prior art said you can cover just the nipple or you can cover a little more or you can cover everything, then why doesn't that suggest you could also cover three quarters? It's not a matter of could, Your Honor. Why would somebody do it? Would there be any benefit in doing it? Sure. Exactly the benefit that Judge Lynn said would be common sense to have a more even curvature. But that benefit, Your Honor, doesn't exist. There's no material difference between making the device that much bigger in terms of the level of curvature. The level of curvature is not an issue. It's not visible either way. The issue is the periphery, Your Honor, and getting the periphery less visible. It's not a matter of common sense when the prior art says, listen, to make it less visible we want less material. We want to have a small device that sort of just goes around the area. If we agreed with you that the prior art taught sharply away, you would have a strong argument. But let's assume for the moment that we aren't persuaded by the teaching away argument. Then you made a second distinct argument, I thought, but it's a little unclear to me exactly what it is. We have a couple of other related arguments, Your Honor. One is this. One is that the invention has unexpected benefits as compared to the prior art. Why is it unexpected? It seems to me Judge Lynn is right on target. It would be exactly expected. The benefits that are unexpected are the following, Your Honor. One is that the periphery is less visible if it's made bigger. And that comes from a couple of different physical phenomena. How is that unexpected? Any device that is intended to taper off to provide some smooth transition, the longer or more gradual the taper, the less visible the transition. Because, Your Honor, the invisibility doesn't come from the relative degree of tapering. We're talking about a device that's not that thick in the center. It doesn't taper over that long a distance. And so whether it tapers over half an inch or two inches, the slope is not significantly different. If somebody looked at that and said, well, look, I made it bigger, I might have a lower slope, somebody would say, correctly, that's completely irrelevant. It wouldn't have any impact. That has zero impact, Your Honor.  So what is it that we're talking about here that provides this unexpected benefit? There are a couple of things, Your Honor. One is that when the edges curve back away, when the peripheries curve back away and contacts the breast, it's less visible. It's able to more smoothly integrate with the breast compared to forearm when you're looking at it with clothing over it. When I read the patent, I didn't see anything that seemed to talk about this as a factor, let alone a significant factor, in this invention. I agree, Your Honor. The benefits were not disclosed in the patent. They were unexpected, Your Honor.  Maybe not unexpected, maybe it's just creatively asserted as a matter of argument in a legal context. No, Your Honor. There's a big difference. There is, Your Honor, but it's a question of fact. Whether benefits are expected or unexpected is simply a question of fact. The evidence on it is undisputed. There's factual evidence in the form of the opinion of Dr. DeGue explaining in detail why the benefits were unexpected and what they were. Those facts were not opposed by any other evidence. Therefore, those facts have to be accepted for purposes of summary judgment. So we start with that factual premise. We can't start with any other on summary judgment. In fact, if we were moving for summary judgment, we'd still have to accept those facts because there's no evidence on the other side contrary to those facts. So we start with the facts that the benefits were unexpected. The benefits as articulated by Dr. DeGue. And that has to form the basis of the obviousness decision. I don't believe you can get to obviousness in this case when you accept the facts about unexpected benefits. The third area, Your Honors, is that the prior art would not have been able to be naturally combined. That any method of considering making the prior art combine would result in obliterating key features of the prior art. For example, Hattori, Your Honor. Which Hattori? Hattori 550, the principal reference relied upon by the district court. Hattori 550's central teaching is to use this method of Velcro attachment. That's what the whole patent is about. That's all it teaches. If one were going to try to combine that in some way to arrive at the black invention, you would have to get rid of that. You'd have to obliterate it. You'd have to disappear it. So what? Well, this court has held that when you've got prior art, that in order to make a combination, you'd have to obliterate the essence of it. That cannot work in a combination. It's akin to teaching away. It's a slightly different doctrine, but it's akin to teaching away. Considering whether different elements... You don't have to take every teaching of a prior art reference. You can mix and match. You can take teaching one from reference A and teaching three from reference B and teaching six from reference C. There's no case law precluding that. I have to disagree, Your Honor. In the case this court has held, and we've cited in our brief, that you have to consider the prior art reference as a whole. You can't disregard teaching away statements and just focus on the statements that are helpful. This court has reversed district court decisions of obviousness on that ground alone, Your Honor. You have to consider what the prior art teaches as a whole for purposes of obviousness. Of course. Anticipation is a different issue. I agree, Your Honor. For purposes of obviousness, you have to consider it as a whole because we're faced with a situation where, for obviousness, it's admittedly novel. There's nothing out there like it. Why would somebody come up with it? Does a prior art teach to come up with it? Does it teach in that direction? No, it teaches away. Finally, Your Honor, I'll just briefly touch on the evidence relating to secondary factors, additional evidence. There was evidence that was undisputed of a long-felt, unmet need that was met by this invention. The need had been present for decades. It was undisputed. It's undisputed that this invention met that need and that after its introduction resulted in commercial success. You're referring to Nubra. No nexus. I'm sorry, Your Honor? You're referring to the Nubra? Yes, Your Honor. Judge Michel, you said no nexus. That's correct, Your Honor. The court found no nexus. I'm not saying no nexus. The trial judge said no nexus. The court ignored the evidence of nexus, Your Honor. We submitted evidence that the Nubra embodied the invention exactly, that the sole reason for its commercial success was the features of the patented invention. Well, it didn't embody it exactly. It perhaps embodied it together with additional structure and additional features. It had one other feature, Your Honor, which was the clip in the middle. That makes a difference, does it not? It does, Your Honor. We submitted evidence that was unrebutted that the clip in the middle was not the basis for the commercial success of the Nubra. Other, even brawless devices, had clips in the middle, and yet they didn't have the success of this. This filled a different need, and that was because of the features of the patented invention, which were the advertised features, that it would lead to something that was invisible, that it was able to actually conceal a nipple, whereas prior art devices were not capable even of concealing a nipple. Your Honor, with that, I think I'll reserve the balance. Very well, thank you. Mr. Schwartz? Morning. Edward Schwartz on behalf of the defendants. I'll respond to the various points that Mr. DeBell just made, but I'd like to put it in context. Nothing that he just said shows that the district court's decision was wrong. The uncontroverted facts in this case show that a jury or any fact finder could only find this patent to be invalid. I can explain why very briefly. We've asserted a number of bases why the patent was invalid. Only two matter for today. One is obviousness under Section 103. We also asserted that there was a failure to meet the written description requirement under Section 112. That will become important in a second. What was uncontroverted with regard to the obviousness issue was that during prosecution of the patent, it's uncontroverted that all the elements of the claims were clearly shown in combination of prior art references except for the size limitation. It's uncontroverted that the size limitation, the approximately one half coverage to less than whole, was added in an amendment to the claims and the examiner added that language to the abstract, but it didn't appear in the original application as filed. It's also uncontroverted that the Hattori 550 patent wasn't before the examiner and that it does show a range of sizes of breast covers. From a nipple cover to one that covers substantially all but not all of the breast. When you put all those together, what the district court said, you have a backyard inventor. This isn't rocket science. What they're trying to do is meet the sensibilities of the wearer and some will want a relatively small coverage of the breast. Others will need larger. You adjust the size. The patent, the 606 patent in suit, doesn't disclose the language of the claims. What it does is show a nipple cover and figures. I'll get to that. Hattori shows it. So the only basis that the plaintiff could say here about Hattori is it's not analogous art. That's the only argument they made before the district court. I would point you to the Hattori patent. It's 8-2-10 in the appendix. It's clear. If you look at it, just refer to it. This will take a second. 8-2-10, column 1, line 18. It says, on the background of the invention, the personal wearing articles referred to herein include ballet suits, gym suits, tank top dresses, and brassieres without shoulder straps. That's the subject matter of the 606 patent. You go to column 2, line 25. They're talking about problems with the prior art. In spite of these disadvantages, brassieres are in wide use in order to correct the shape of the breast and prevent the shape and color of the nipples to be seen through the garment. That's the problem that we're talking about. You go down a little further, same column, lines 33. They're talking about why people might not wear halter tops and the like. That is, when women wear a so-called tank top dress, which leaves the shoulders and bust naked, they go no brassiere. However, those women who have unshapely or drooping breasts are, of course, reluctant to go no brassiere. Another reason for reluctance is that the nipples can be seen through the garment. That's what this patent talks about as the background. They then go on. Hattori addresses the drooping breast problem. But that doesn't make it non-analogous art. As the Supreme Court said in KSR, a patent can teach multiple things, and the fact that it may address one problem but not the other, it still would be considered by someone of ordinary skill in the art. If it was, that provides the motivation for combining. That's what the district court did. It would have been obvious to someone of skill in the art, make the size difference. And the exact size differential is shown in the Hattori 550. Now, a patentee could have put in maybe evidence, Dragoo testified to everything else, but one thing she didn't testify to is that the Hattori size reference wouldn't be used, taken from the prior and combined with what was before the patent office. And the reason she didn't do that is the problem they had with the written description required. With the written description, Judge Lynn was correct. There's no discussion of this importance of the size differential in this patent. This was an afterthought by the patentee and the examiner, years after the application was filed. As the court might have noted, this was filed in 1999 and was revived in 2004. It had been abandoned for years. If you look at the patent in suit, page 89, A89, the only reference to the size, A89, is in column 2. It starts at line 50 of column 2. This is pretty close language to what was in Hattori, by the way. The nipple cover is of sufficient size that it can cover a user's entire nipple and areola. The cover will also extend a short distance beyond this area to ensure complete coverage. That's the whole description. Then you go on to the preferred embodiment. In the preferred embodiment, the nipple cover will extend approximately one-eighth to one-fourth of an inch beyond the areola. The exact size of the nipple cover, however, will vary. There's nothing in this specification that talks about that upper range of less than the entire breast. Does it cover 80 percent, up to 90, up to 75? There's nothing in there about it. That language is the entire language on the size. That doesn't support the language in the claim. It's okay. There's nothing in the spec. Let's look at the figures. Well, figure 1 is the preferred embodiment that they just, as said on here, covers one-eighth to one-fourth of an inch beyond the areola. That's the only embodiment shown. There is only one preferred embodiment shown in the figures, and that's the preferred embodiment. There's nothing in the figures to support that higher range. We can argue, as we did on our briefs before the district court, about whether it shows approximately 50 percent, but it certainly doesn't show the upper range. There's no support for that. We don't have a written description. No. I'm going to wait. No, you don't. There seems to be a huge amount of talk that's relevant to written description, a non-issue in this appeal. Next set. I'm up to tying it. The reason, therefore, for them to get by this written description, they would have had to put in a declaration saying, someone reading this disclosure of ordinary skill in the art, the size difference would have been obvious to them. But if they did that, then they'd lose under 103. Either way, anyone looking at this situation, if it was obvious to someone's skill in the art, it's invalid under 103. If it's not obvious to someone of skill in the art, it's invalid under the written description, and, therefore, they couldn't put in evidence either way because they would absolutely lose. It's a Sellotex argument. We put in evidence of Hattori showing the size differential. They couldn't put in evidence saying a combination of the size differential wouldn't have been obvious because then the judge would have granted summary judgment on the written description requirement. Either way, if this went to a jury, the jury could find either way whether it would be obvious to one of skill in the art and the patent's invalid. It makes no difference. The uncontroverted facts leave only this one issue, and the district court said, looking at Hattori, that size, its range is disclosed. It would have been obvious to someone of skill in the art to make it of a different size range. With regard to some of the comments raised by Mr. DeVell, he said that the prior art taught away from making it larger. Nothing in the prior art teaches away. Teaching away says there's a characteristic that would have been harmful to the product and wouldn't have worked. There's nothing in the prior art that says that. Some of them may disclose small nipple covers, but they don't say don't make it larger. It won't work. As far as unexpected benefits, a long-felt need, there certainly was a long-felt need. It was met by the new product, my client's product, which was a tremendous sensational success, has four patents of its own because of the benefits of that class. When my client, Siswar, tried to sell their product, the same people who bought the Nubra laughed at their product, and it wouldn't meet anyone's needs. Nobody would buy it. The same retailers that they are suing here for selling the Nubra refused to consider even selling their product. It didn't meet any need whatsoever. By the way, before the district court on the nexus issue, the patentee argued that it was our burden to prove that there was no nexus, and so they put in no evidence on the nexus issue. That was the only way the issues were raised here. Any other questions? Thank you. Thank you, Your Honor. Most of counsel's arguments were arguments that were not made below or in the briefs. Counsel said that the only thing we argued below was that Hattori was not analogous art. That's the only thing we did not argue, Your Honor. That was not an issue, whether it was analogous art, whether it was part of the prior art. Counsel said that we didn't put in evidence that Hattori wouldn't be combined with the other references. That's not true. All of our evidence showing non-obviousness, showing that one of ordinary skill would never have thought to combine these, focused specifically on Hattori 550. So the undisputed evidence in terms of what the facts are, Your Honor, the facts that we have to base summary judgment on, are that one of ordinary skill would not have considered this for combination. We can't simply, as Your Honor's know, locate elements in the prior art and then say we're done with our job of obviousness. We have to have a reason to combine them. There was no reason to combine shown either in the district court or on appeal. The reasons that were proffered by the defendants and by counsel we've shown in our brief don't make sense or are contrary to the facts. Counsel said that the argument about teaching away, saying that the prior art didn't teach away. Well, teaching away is not merely saying that something is bad. It is also saying, hey, here's how you need to do it. They didn't say don't make it bigger. What they said was only make it smaller. They used the word only. The word only highlighted in our brief as cited from the prior art references that the court relied upon. Finally, with regard to nexus evidence, the statement was made that we didn't present nexus evidence in the district court. That's simply not true, Your Honor. We've got our nexus evidence in the record and it's in Dr. DeRue's declaration which is in the record. Unless there are any other questions, I will submit. Thank you both. The appeal is submitted.